FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

22 NOV 28   AM 11' 08

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
              DEPUTY CLERK

MONKEYMEDIA, INC.,                §
                    PLAINTIFF,    §
                                  §
V.                                §        CASE NO. 1:20-CV-010-LY
                                  §
AMAZON.COM, INC.,                 §
                    DEFENDANT.    §

## MEMORANDUM OPINION AND ORDER REGARDING CLAIM CONSTRUCTION

Before the court in the above-styled and numbered cause are Plaintiff' Opening Claim Construction Brief filed October 7, 2020 (Doc. #25); Opening Claim Construction Brief of Amazon.com, Inc. filed October 7, 2020 (Doc. #26); Plaintiff USB Bridge Solutions, LLC's Responsive Claim Construction Brief filed November 2, 2018 (Doc. #44); Defendants' Responsive Claim Construction Brief filed November 2, 2018 (Doc. #45); the parties' Joint Claim Construction Statement filed August 26, 2020 (Doc. #24); and the parties' claim-construction presentations.

The court held a claim-construction hearing on November 12, 2020. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). After considering the patents and their prosecution history, the parties' claim-construction briefs, the applicable law regarding claim construction, and argument of counsel, the court now renders its order with regard to claim construction.

## I.    Introduction

The court renders this memorandum opinion and order to construe the claims of United States Patent Nos. 6,393,158 ('158 Patent) entitled "Method and Storage Device for Expanding and Contracting Continuous Play Media Seamlessly;" 9,185,379 ('379 Patent) entitled "Medium and Method for Interactive Seamless Branching and/or Telescopic Advertising;" 9,247,226 ('226 Patent)

entitled "Method and Storage Device for Expanding and Contracting Continuous Play Media Seamlessly;" and 10,051,298 ('298 Patent) entitled "Method and Storage Device for Expanding and Contracting Continuous Play Media Seamlessly" (collectively, the Asserted Patents).  The '379, '226, and '298 Patents are continuations of the '158 Patent, so all patents have essentially the same specification.  Plaintiff MONKEYmedia, Inc. is the owner of the Asserted Patents, all of which relate to a process called "Seamless Expansion."  For Seamless Expansion, the user views a main audiovisual content during which the user can choose to play expansion content in response to a prompt.  If selected, the expansion content plays, after which the main audiovisual content resumes. MONKEYmedia alleges that Amazon.com, Inc. infringes multiple claims of the Asserted Patents through making, using, offering for sale, selling, or importing infringing products.

The '158 Patent was the subject of earlier patent suits brought by MONKEYmedia before this court.[1]  In the Apple Cases, the special master construed several of the terms in the '158 Patent, including five that are disputed in this case.  These terms are "segment," "link," "linking," "expansion link," and "transition."  The court adopted all the special master's constructions for those five terms.[2]

## II.    Legal Principles of Claim Construction

Determining infringement is a two-step process. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996) ([There are] two elements of a simple patent case, construing the patent and determining whether infringement occurred. . . . ).  First, the meaning and scope of the relevant

---

[1] *MONKEYmedia v. Apple, Inc.*, Cause Nos. 1:10-CV-319-SS, 1:10-CV-533-SS, 2015 WL 4758489 (W.D. Tex. Aug. 11, 2015) (the "Apple Cases")

[2] For "link" and "linking," the court added the word "predetermined" to the construction for clarification.

claims must be ascertained. *Id.* Second, the properly construed claims must be compared to the accused device. *Id.* Step one, claim construction, is the current issue before the court.

Claim construction is exclusively for the court to determine. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015) (quoting *Markman*, 517 U.S. at 372). The "words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ." *Id.* at 1313. The person of ordinary skill in the art is deemed to have read the claim term in the context of the entire patent. *Id.* Therefore, to ascertain the meaning of a claim, a court must look to the claim, the specification, and the patent's prosecution history. *Id.* at 1314–17; *Markman*, 52 F.3d at 979.

Claim language guides the court's construction of a claim term. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent . . . ." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.* at 1314–15.

Claims must also be read "in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979. "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582). In the specification, a patentee may define a term to have a meaning that differs from the meaning that the term would otherwise possess. *Id.* at 1316. In such a case, the patentee's lexicography governs. *Id.* The specification may also reveal

a patentee's intent to disavow claim scope. *Id.* Such intention is dispositive of claim construction. *Id.* Although the specification may indicate that a certain embodiment is preferred, a particular embodiment appearing in the specification will not be read into the claim when the claim language is broader than the embodiment. *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

The prosecution history is another tool to supply the proper context for claim construction because it demonstrates how the inventor understood the invention. *Phillips*, 415 F.3d at 1317. A patentee may also serve as his own lexicographer and define a disputed term in prosecuting a patent. *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004). Similarly, distinguishing the claimed invention over the prior art during prosecution indicates what a claim does not cover. *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). A disclaimer of claim scope must be clear and unambiguous. *Middleton, Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002).

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (internal quotations omitted). Technical dictionaries and treatises may help the court understand the underlying technology and the manner in which one skilled in the art might use a claim term, but such sources may also provide overly broad definitions or may not be indicative of how a term is used in the patent. *See Id.* at 1318. Similarly, expert testimony may aid the court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful

4

to a court." *Id.*  Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms . . . ." *Id.*  Extrinsic evidence may be useful when considered in the context of the intrinsic evidence, *Id. at* 1319, but it cannot "alter a claim construction dictated by a proper analysis of the intrinsic evidence."  *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1139 (Fed. Cir. 2004).  To the extent the court "make[s] subsidiary factual findings about th[e] extrinsic evidence," the court construes the claims in light of those factual findings.  *Teva*, 574 U.S. at 332.

**Indefiniteness**

A claim is indefinite if it does not reasonably inform a person of ordinary skill in the art of the claim scope.  *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383–84 (Fed. Cir. 2005).  "Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention."  *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014).  However, "[t]he claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art."  *Id.* at 1371.

## III.    Discussion

### A.    *Agreed Constructions*

The parties agreed to the construction of nine terms.[3] The court adopts the agreed

construction of those claim terms as listed in the table below.[4]

| Claim Term/Phrase | Adopted Agreed Construction |
|---|---|
| "stored content"<br><br>['158 and '226 Patents] | **content that minimally contains images or text that can be displayed, and is stored** |
| "continuing segment"<br><br>['158 Patent] | **the segment of main content that plays after the "at least one segment"** |
| "continuing portion"<br><br>['226 Patent] | **the portion of the main content that plays after the "first portion"** |
| "cue"<br><br>['158, '379, '226, and '298 Patents] | **a prompt or guiding suggestion** |
| "highlighting"/"highlighted"<br><br>['158, '226, and '298 Patents] | **calling attention to a cue or to other information** |
| "discernible entity"<br><br>['379 and '298 Patents] | **a graphical or auditory element that is distinguishable from the surrounding context** |
| "expansion cue container"<br><br>['158 and '226 Patents] | **a receptacle for holing expansion cues into and from which cues can be inserted and removed** |

---

[3] The parties disputed whether the preamble for Claims 1 and 13 of the '298 Patent was limiting in the Joint Claim Construction (Doc. #24), but agreed in briefing that the preamble was limiting. (Doc. #25).  The parties agreed to the construction after the November 12, 2020 claim-construction hearing (Doc. #32).

[4] Throughout this order, the **bolded** claim terms indicate the court's adopted construction.

6

| | |
|---|---|
| "A [set top] media player for capturing and playing continuous play media streams, the media player comprising a display circuit, a selector interface coupled to a digital controller, memory caching storage, and an interface circuit comprising an external interface circuit"<br><br>['298 Patent] | **Preamble is limiting** |
| "transition"<br><br>['379 and '298 Patents] | **Audio or visual content or effect that is presented while passing from one piece of content to another** |

B. *Disputed Terms*

The parties dispute the construction of 17 terms. Each disputed term is discussed separately.

1. "segment"

The parties' proposed constructions of this term, as used in Claims 37, 40 and 41 of the '158 Patent and Claims 7 and 9 of the '226 Patent, are listed in the following table:

| MONKEYmedia's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| No construction necessary<br><br>If construction: "a stream or portion of a stream of multimedia content." | "a sequence of media content that is fixed and predetermined prior to playing" |

MONKEYmedia argues that the term "segment" should be given its plain and ordinary meaning. MONKEYmedia notes that segment is used in two different ways in the specification: (1) segments created by block coding during the authoring process and (2) parts of a stream. A person

of ordinary skill in the art,[5]  MONKEYmedia argues, would know from the use of the term in the claims that segment means parts of a stream.  MONKEYmedia asserts that Amazon's construction improperly limits the term to mean segments created by block coding during the authoring process, ignoring a central idea of the invention—that the user interacts with the content to determine the beginning and end of the segment.

Amazon argues that the court's construction in the Apple Cases should be adopted by the court, noting that the law promotes uniformity and deference to prior decisions.  *See Markman*, 517 U.S. at 390; *TQP Dev., LLC v. Intuit Inc.*, 2014 WL 2810016, at *6 (E.D. Tex. June 20, 2014) ("[P]revious claim constructions in cases involving the same patent are entitled to substantial weight, and the Court has determined that it will not depart from those constructions absent a strong reason for doing so.").  Amazon further notes that MONKEYmedia agreed to Amazon's construction in another case it filed against Samsung in the Eastern District of Texas. *MONKEYmedia, Inc. v. Samsung Elec. Co. Ltd.*, 2:17-cv-00460, Dkt. 47, Plaintiff's Claim Construction Reply Brief at 1-2 (E.D. Tex. Apr. 13, 2018).

Amazon also argues that MONKEYmedia's argument regarding two definitions of "segment" is unsupported by the specification as the specification only contemplates segments as being fixed and predetermined.  Amazon notes that during reexamination of the '158 Patent, the examiner rejected MONKEYmedia's argument that segments are dynamic, finding that MONKEYmedia's claims were obvious because both the prior art source and the '158 Patent

---

[5] The parties agree that a person of ordinary skill in the art is a person with "[a] bachelor's degree or higher in computer science, cognitive science, computer engineering, computer user interface design, multimedia or equivalent degree, and at least two hear of experience in the field of computer user interface design or software design and implementation.  Additional education could have substituted for professional experience, and significant work experience could have substituted for formal education."

disclosed fixed and predetermined segments.  The court agrees.  In the Apple Cases, the court's careful construction is presumed to be correct.  In addition, the court's construction was based on the specification, which was the same for all of the Asserted Patents, and the intrinsic evidence points to the idea that segments must be predetermined and fixed.

The court concludes the construction of "segment" to be: **a sequence of media content that is fixed and predetermined prior to playing**.

2. "subset"

The parties' proposed constructions of this term, as used in Claims 21 and 25 of the '379 Patent, are listed in the following table:

| MONKEYmedia's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| Plain and Ordinary Meaning | "a sequence of media content that is fixed and predetermined prior to playing" |

MONKEYmedia argues that the term "subset" has no special meaning to a person of ordinary skill in the art and should be given it's plain and ordinary meaning.  MONKEYmedia asserts that Amazon's construction of subset is the same as its construction of segment that conflicts with the presumption that different terms have different meanings. *See Board of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.,* 533 F.3d 1362, 1371 (Fed. Cir. 2008).  Because the subset is used to describe both a part of the media stream and a part of the display space, MONKEYmedia contends, giving subset the same meaning as segment would not make sense.

Amazon argues that "subset" never appears in the specification, noting that when comparing claims in the '379 Patent to the claims in the '158 Patent, the subset is used in the same way as segment.  Amazon further argues that if subset was given a different meaning than segment, the patent would be invalid under written description because there is no support for the term in the

9

specification.  Amazon asserts that different words can have the same meaning if they are used in different patents within the same family of patents, and in this case subset is used in the same way as segment, so it should be construed the same.

Although segment and subset are different terms, subset is used in almost the exact same way as segment in the Asserted Patent claims, and the specification does not explain what subset means or why it should be different than segment.

The court concludes the construction of "subset" to be: **a sequence of media content that is fixed and predetermined prior to playing**.

3. "portion"

The parties' proposed constructions of this term, as used in Claims 1 and 5 of the '226 Patent, are listed in the following table:

| MONKEYmedia's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| Plain and Ordinary Meaning | "a sequence of media content that is fixed and predetermined prior to playing" |

During prosecution, MONKEYmedia was granted a post-allowance amendment to change the word "segment" in some of the claims to "portion," which MONKEYmedia argues indicates that there is a difference between these two terms.  MONKEYmedia contends that the amendment clarified that the terms had distinct meanings, specifically to obviate the issue of being predetermined and fixed.  Therefore, MONKEYmedia argues, portion should be given its plain and ordinary meaning, which is different from segment.

Amazon argues that portion never appears in the specification; therefore, it is unclear how it should be defined, noting that when comparing claims in the '226 Patent to the claims in the '158 Patent, portion is used in the same way as segment.  Like the argument for subset, Amazon asserts

10

that if portion is given a different meaning than segment, the patent would be invalid under written description because there is no support for the term in the specification.

Because MONKEYmedia and Amazon present a fundamental disagreement over the construction of portion, the court must resolve this dispute. *See O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."); *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009) (citing *O2 Micro*, 521 F.3d at 1361–62) ("[T]he court's obligation is to ensure that questions of the scope of the patent claims are not left to the jury.") Although segment, subset, and portion are different terms, like the term "subset," the term "portion" is used in almost the exact same way as segment in the Asserted Patent claims, and the specification does not explain what subset means or why it should be different than segment.

The court concludes the construction of "portion" to be: **a sequence of media content that is fixed and predetermined prior to playing**.

4. "link"

The parties' proposed constructions of this term, as used in Claims 37, 40 and 41 of the '158 Patent and Claims 1 and 7 of the '226 Patent, are listed in the following table:

| MONKEYmedia's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| No construction necessary<br><br>If construction: "a rule or collection of rules that determines the next content." | "a predetermined connection from one specified segment/portion to another specified segment" |

5. "linking"

The parties' proposed constructions of this term, as used in Claims 37, 40, and 41 of the '158 Patent, are listed in the following table:

| MONKEYmedia's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| No construction necessary<br><br>If construction: "applying link rules" | "following the predetermined connection from one specified segment/portion to another specified segment/portion" |

6. "expansion link"

The parties' proposed constructions of this term, as used in Claims 37, 40, and 41 of the '158 Patent and Claims 1 and 7 of the '226 Patent, are listed in the following table:

| MONKEYmedia's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| No construction necessary:<br><br>If construction: "a link to expansion content" | "a link from a specified segment/portion to a specified expansion segment/portion" |

7. "continuity link"

The parties' proposed constructions of this term, as used in Claims 1 and 7 of the '226 Patent, are listed in the following table:

| MONKEYmedia's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| No construction necessary<br><br>If construction: "a link to a continuing portion or segment" | "a link from a specified segment/portion to a specified continuing segment/portion" |

MONKEYmedia contends that the term "link" broadly refers to a connection between two sets of data in the field of computer applications, arguing that "link" (and the other "link" terms) do not require any construction because link had no special meaning in the field of the invention at the

time of the invention, and is readily understandable by the jury in the context of the claims. MONKEYmedia further argues that if construction is necessary, the intrinsic evidence makes clear that link in the context of the asserted claims means "a rule or collection of rules that determines the next selection of content," and that "linking" simply means "applying the link rules." MONKEYmedia contends that the problem with Amazon's proposed construction of all the "link" terms is the unnecessary inclusion of the words "predetermined" and "specified" that are confusing and will allow Amazon to argue for improperly narrowing the scope of these terms, arguing that the specification of the Asserted Patents teaches that a link need not be predetermined or connect from or to a specified segment if it is implicit because it makes the connection available but require some action by the user to trigger the connection.

In response, Amazon notes that its proposed constructions drawn almost verbatim from the court's constructions in the Apple Cases, with the exception of the addition of "portion" to ensure consistency with the '226 patent-claim language. Amazon argues that the intrinsic evidence shows that a link must be a predetermined connection from one specified segment to another specified segment because all segments are fixed and predetermined. Amazon asserts that the claims confirm that the links are to "specified segments" because the "plurality of links" are "to a corresponding plurality of other . . . segments." *See* '158 patent at claim 37. Further, Amazon asserts that the specification describes that any linking information must be predetermined because it is fetched prior to playing. *See id.* at Fig. 10. Therefore, Amazaon argues, the links are predetermined and cannot change on the fly. The court agrees. The court finds that the specification does not use the term "link" to describe the ability to make a connection available, but rather a concrete data structure from one segment or portion to another, whether or not the segments or portions are temporally adjacent or not.

The court concludes the construction of "link" to be: **a predetermined connection from one specified segment/portion to another specified segment**.

The court concludes the construction of "linking" to be: **following the predetermined connection from one specified segment/portion to another specified segment/portion**.

The court concludes the construction of "expansion link" to be: **a link from a specified segment/portion to a specified expansion segment/portion**.

The court concludes the construction of "continuity link" to be: **a link from a specified segment/portion to a specified continuing segment/portion**.

***"Terminus" Claim Terms***

8. "terminus"

The parties' proposed constructions of this term, as used in Claims 37, 40, and 41 of the '158 Patent and Claims 1 and 7 of the '226 Patent, are listed in the following table:

| MONKEYmedia's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| No construction necessary<br><br>If construction: "a point in time" | "a point that is fixed and predetermined prior to playing" |

9. "interruption terminus"

The parties' proposed constructions of this term, as used in Claims 1 and 7 of the '226 Patent, are listed in the following table:

| MONKEYmedia's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| No construction necessary<br><br>If construction: "a point in time in the primary content continuous play media stream when the primary content is interrupted" | "a point that is fixed and predetermined prior to playing and at which play can be interrupted" |

10. "resume-point terminus" / "resume point"

The parties' proposed constructions of this term, as used in Claims 21 and 22 of the '379 Patent, Claims 1 and 7 of the '226 Patent, and Claims 1 and 13 of the '298 Patent, are listed in the following table:

| MONKEYmedia's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| No construction necessary<br><br>If construction: "a point in time in the primary content continuous play media stream when the primary content resumes" | "a point that is fixed and predetermined prior to playing and at which play can be resumed" |

MONKEYmedia argues that the term "terminus" and other related terms do not require any construction because they had no special meaning in the field of the invention at the time of the invention, and they are readily understandable by the jury in the context of the claims.[6]  In support, MONEYmedia asserts that language in the specification of the '226 Patent regarding the manner in which termini "may vary" and "may grow" indicates that termini are not fixed or predetermined,

---

[6] A term that is readily understandable by the jury in the context of the claims would also be understandable to a person of ordinary skill in the art.

15

and that the limitation in Claim 1(f)(ii) of the '379 Patent indicates that the termini are not known until the expansion decision point is determined by user interaction.

Amazon argues that nothing in the specification supports establishing the beginning and ending termini of a segment on the fly, and that because the segment/portion/subset is predetermined, it follows that the termini are fixed and predetermined prior to playing as well.

Because the terms in the specification seem to suggest that the termini are changing while playing on the fly, the court finds that "terminus" is not always a point that is fixed or predetermined prior to playing.

The court concludes **no construction of the claim term is necessary**.

11. "expansion decision point"

The parties' proposed constructions of this term, as used in Claims 1, 5, 8, 11, and 16 of the '485 Patent, are listed in the following table:

| MONKEYmedia's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| No construction necessary<br><br>If construction: "a point in time in the primary content continuous play media stream when the user decision to access optional content is detected by the device" | "a point that is fixed and predetermined prior to playing and at which a decision to play expansion can occur" |

MONKEYmedia asserts that the "expansion decision point" cannot be fixed because the interruption terminus and the resume point terminus are determined on the fly by the user; therefore, construing the "expansion decision point" as being fixed and predetermined would ignore the importance of user interaction to the invention because it occurs is when the user's decision to select and expansion is detected, as depicted in Fig. 7A. A person of ordinary skill in the art,

MONKEYmedia argues, would understand that video flows at 30 frames per second, so the user can make decisions at any of these frames and create the "expansion decision point" on the fly.

Amazon argues that the term "expansion decision point" does not appear in the specification. Relying on Fig.7A, Amazon asserts that it is clear from the specification that this point is fixed and predetermined. The court disagrees.

The court concludes **no construction of the claim term is necessary**.

12. "landing offset"

The parties' proposed constructions of this term, as used in Claim 21 of the '379 Patent and Claims 1 and 13 of the '298 Patent, are listed in the following table:

| MONKEYmedia's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| No construction necessary<br><br>If construction: "temporal displacement" | "point temporally located after the beginning of the [second subset/continuing portion]" |

MONKEYmedia argues that the court's construction of the term "continuity link offset" in the Apple Cases should not be applied to "landing offset" because it would ignore long-settled law requiring different claim terms to have different meanings. *See American Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1360 (Fed. Cir. 2010) (holding that "under the doctrine of claim differentiation, []dependent claims give rise to a presumption that the broader independent claims are not confined to that range") (citation omitted). MONKEYmedia asserts that the "continuity link" offset must go to the continuity subset, but the "landing offset" is a broader term that need not only be restricted to the continuity subset, arguing that the specification shows that the purpose of the landing offset is to provide a more seamless experience for the user and that nothing in the specification limits the landing offset to being only after the first terminus of the continuity segment.

Amazon argues that in the Apple Cases the court essentially construed the term "landing offset" by construing "continuity link offset." Therefore, the same construction should be applied to "landing offset." Amazon asserts that MONKEYmedia's claim differentiation argument is litigation-driven and should be discounted by the court. The court disagrees.

The court concludes **no construction of the claim term is necessary**.

13. "spatiotemporal continuity" / "spatiotemporally continuous"

The parties' proposed constructions of this term, as used in Claim 21 of the '379 Patent, Claims 1 and 7 of the '226 Patent, and Claims 1 and 13 of the '298 Patent, are listed in the following table:

| MONKEYmedia's Proposed Construction | Amazon's Proposed Construction |
| --- | --- |
| No construction necessary<br><br>If construction: "in temporal succession and in substantially the same display space" | Indefinite |

MONKEYmedia argues that although the only claims in which the term "spatiotemporal continuity" is used are in the '379, '226, and '298 Patents that were issued 10 years after the parent '158 Patent, the co-inventors addressed what the term meant in its declarations during the reexamination of the '158 Patent. Therefore, MONKEYmedia contends, the declarations were a part of the intrinsic evidence that a person of ordinary skill in the art can consider when determining the meaning of "spatiotemporal continuity."

Amazon argues that "spatiotemporal continuity" and "spatiotemporally continuous" are subjective and thus indefinite. A person of ordinary skill in the art, Amazon contends, would understand "spatiotemporal continuity" to encompass at least temporal continuity and spatial

continuity. Amazon argues, however, that the specification does not provide the boundaries for either.

The court finds that the specification, including Figs. 4A-4D, provide enough certainty to the term "spatiotemporal continuity" to render it definite so that a person of ordinary skill in the art would understand what this term means.

The court concludes **no construction of the claim term is necessary**.

14. "substantially fills"

The parties' proposed constructions of this term, as used in Claim 21 of the '379 Patent and Claims 1 and 13 of the '298 Patent, are listed in the following table:

| MONKEYmedia's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| No construction necessary beyond plain and ordinary meaning | Indefinite |

MONKEYmedia argues that even though "substantially" is a term of degree, the specification gives enough certainty to the term to render it definite. MONKEYmedia notes that Fig. 4C shows what it looks like for the content to "substantially fill" the display space. Therefore, MONKEYmedia argues, the plain and ordinary meaning of "substantially fills" should be adopted.

Amazon argues that because "substantially" is a term of degree describing the extent to which the visual portion fills the visual display space, MONKEYmedia must provide an objective standard for determining what the term covers. Amazon asserts, however, that the specification does not use the term "substantially fills" and thus does not give an objective standard for what the term means. Although the term "substantially" is used in the specification, Amazon notes, it is used in entirely different contexts that do not provide an objective standard for the term "substantially fills." Thus, Amazon argues, the term is indefinite.

The court finds that Figs. 4A-4D and the specification sufficiently describes the term "substantially fills" to render the term definite. Although this term does not include completely objective boundaries, a person of ordinary skill in the art would be able to understand with enough certainty what this term means.

The court concludes **no construction of the claim term is necessary**.

15. "after at most a small amount of time"

The parties' proposed constructions of this term, as used in Claims 1 and 7 of the '226 Patent, are listed in the following table:

| MONKEYmedia's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| No construction necessary beyond plain and ordinary meaning | Indefinite |

MONKEYmedia argues that person of ordinary skill in the art at the time of the invention would recognize what the term "after at most a small amount of time" means because broadcast systems at the time experienced a delay when switching between content and the invention included the term "after at most a small amount of time" in recognition of this feature.

Amazon argues that "after at most a small amount of time" is a term of degree. Neither the specification nor the prosecution history provide an objective standard for the term. Therefore, it is indefinite.

The court finds that the intrinsic record provides certainty to the term "after at most a small amount of time" for a person of ordinary skill in the art to understand the term and that Amazon does not provide sufficient evidence to explain why a person of ordinary skill in the art would not know the scope of the term.

The court concludes **no construction of the claim term is necessary**.

16. "providing a highlighted expansion cue to a user that is integrated with the display . . . whereby the display of the expansion cue is distinct from the display of the at least one segment"

The parties' proposed constructions of this term, as used in Claim 7 of the '226 Patent, are listed in the following table:

| MONKEYmedia's Proposed Construction | Amazon's Proposed Construction |
| --- | --- |
| No construction necessary<br><br>If construction: See "highlighted," "cue" and "segment." Plain and Ordinary Meaning as to the remaining language. | Indefinite |

MONKEYmedia argues that no construction is necessary because a person of ordinary skill in the art would know that having a cue "integrated with the display" means the cue would show in the same display space as the continuous play media, and that the cue "distinct from the display space" is an overlay, popup, or effect applied to the continuous play segment and is not a part of the segment itself.

Amazon asserts that it is unclear how the expansion cue would be both "distinct from" and "integrated with" the display of the segment, which is an irreconcilable contradiction. Amazon also argues that the claims, specification, and prosecution history do not provide any more clarity to what this term means.

The court finds that Figs. 4A, 4B, and 5D of the Asserted Patents provide enough certainty to the term to render it definite. It is not irreconcilable that the cue is both "integrated with" and "distinct from" display of the segment. Overlays, popup, and effects are all distinct from the display of the segment in that they are in a different window or are in some way separate from the segment.

However, it is still integrated in that it is located, for example, on top of the display of the segment.

The court concludes that **no construction of the claim term is necessary**.

C.    *Summary Table of Disputed Terms*

| Term | Court's Construction |
|------|----------------------|
| "segment" | a sequence of media content that is fixed and predetermined prior to playing |
| "subset" | a sequence of media content that is fixed and predetermined prior to playing |
| "portion" | a sequence of media content that is fixed and predetermined prior to playing |
| "link" | a predetermined connection from one specified segment/portion to another specified segment/portion |
| "linking" | following the predetermined connection from one specified segment/portion to another specified segment/portion |
| "expansion link" | a link from a specified segment/portion to a specified expansion segment/portion |
| "continuity link" | a link from a specified segment/portion to a specified continuing segment/portion |
| "terminus" | no construction of the claim term is necessary |
| "interruption terminus" | no construction of the claim term is necessary |
| "resume-point terminus" / "resume-point" | no construction of the claim term is necessary |
| "expansion decision point" | no construction of the claim term is necessary |

| "landing offset" | no construction of the claim term is necessary |
| --- | --- |
| "spatiotemporal continuity" / "spatiotemporally continuous" | no construction of the claim term is necessary |
| "substantially fills" | no construction of the claim term is necessary |
| "after at most a small amount of time" | no construction of the claim term is necessary |
| "providing a highlighted expansion cue to a user that is integrated with the display… whereby the display of the expansion cue is distinct from the display of the at least one segment" | no construction of the claim term is necessary |

**IV.    Conclusion**

For the above reasons, the court construes the disputed claims as noted and so **ORDERS.**

No other claim terms require construction.

**IT IS FURTHER ORDERED** that this case is set for a **Scheduling Conference** on

**Wednesday, February 1, 2023, at 2:00 p.m.,** in Courtroom 7, Seventh Floor, United States

Courthouse, 501 W. 5th Street, Austin, Texas 78701.  If the case is not settled, the

parties shall confer in an attempt to reach agreement on a schedule to follow for the remainder of

the case.  The court will render a scheduling order as a result of the conference.

SIGNED this ⟨signature⟩ day of November, 2022.

⟨signature⟩

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

23